# Malone & Foote *v.* Hill *et al.*

*Bill in Equity by Heirs and Administrators of Deceased Mort-
gagor, for Redemption, Account, and Cancellation of Mort-
gage.*

1. *Appointment of administrator ad litem ; constitutionality of statute
authorizing.*—When a decedent's estate is interested in a suit pending
in the Chancery Court, and there is no regular personal representative,
the court is authorized, and it is its duty, to appoint a special adminis-
trator *ad litem* (Code, § 2625) ; and the statute conferring this power is
not violative of any constitutional provision or principle, although the
Probate Court has exclusive jurisdiction of the grant of administration
on the estates of deceased persons.

2. *Mortgagee's liability for proceeds of crop paid over without adminis-
tration on estate of deceased mortgagor.*—A commission-merchant, receiv-
ing for sale cotton belonging to the estate of the deceased mortgagor, the
proceeds of which should be applied as a payment on his mortgage debt,
acts at his peril in paying the money to a distributee of the estate who
has not qualified as administrator, to enable him to make a crop on the
lands the next year.

APPEAL from the Chancery Court of Wilcox.
Heard before the Hon. CHARLES TURNER.
The bill in this case was filed by the personal representa-

[Malone & Foote v. Hill et al.]

tives and heirs at law of Mrs. Sarah Bryan, deceased, against Malone & Foote, commission-merchants doing business in the city of Mobile, and against the heirs and distributees of the estate of Joseph H. Bryan, deceased; and sought an injunction of a sale under a mortgage executed by Mrs. Bryan to said Malone & Foote, an account and redemption, and the cancellation of the mortgage. The mortgage, a copy of which was made an exhibit to the bill, was dated the 26th February, 1869; purported to be given to secure the payment of a promissory note for $726.65, of even date with the mortgage, and payable ten months after date; and conveyed a tract of land containing about 560 acres, with power of sale on default. The mortgage recited that the lands "did belong to the estate of Henry W. Bryan, deceased, and were conveyed to the said Sarah Bryan by the heirs of said Henry W.;" but Mrs. Bryan owned only an undivided interest of five-sixths, the remaining sixth belonging to Sanford T. Bryan, one of her children, who was *non compos mentis*. Mrs. Bryan died, intestate, on the 23d September, 1871; and letters of administration on her estate were granted, on the 23d November, 1874, to John R. McDowell and John E. Gullett, two of the complainants. Mrs. Bryan left six children surviving her, as her heirs at law and distributees; three of whom were sons (Joseph H., Sanford T., and Leonidas L.), and three daughters; each of them being over twenty-one years of age, and two of the daughters married. Sanford T. Bryan afterwards died, intestate, unmarried, and without children; and Joseph H. Bryan died subsequently, leaving a widow and four infant children. L. L. Bryan and the three daughters joined with the administrators, as complainants in the bill, while the widow and children of Joseph H. Bryan were made defendants; and the bill prayed that special administrators *ad litem* might be appointed for the estates of said Sanford T. and Joseph H Bryan. The mortgaged lands were cultivated, during the years 1872, 1873, and 1874, by Joseph H. Bryan; and during the years 1875, 1876, and 1877, by the administrators of Mrs. Bryan's estate, or were rented out by them.

The bill alleged that the cotton raised on the lands during the year 1871, or realized from the rents, was received and sold by said Malone & Foote after the death of Mrs. Bryan, and the proceeds should have been applied as a credit on the mortgage debt, being about $416; that Joseph H. Bryan cultivated the lands, during the years 1872–74, "with the understanding between him and the other heirs, that he would ship the rent of each year to said Malone & Foote, to be applied by them to the payment of what was due on said note;" that

[Malone & Foote v. Hill et al.]

he did ship the cotton to them pursuant to this agreement, and the balance on the note was thereby discharged in full; that after the death of said Joseph H., the complainants not knowing the state of accounts between Malone & Foote and Mrs. Bryan's estate, and her administrators asking a statement of it, Malone & Foote falsely represented that a large balance was still due on the debt, and thereby induced the administrators to forward to them fifteen bales of cotton. The complainants insisted that the mortgage debt was fully paid, and a balance due to the estate of Mrs. Bryan; and they prayed an account and redemption, an injunction of a threatened sale under the mortgage, a cancellation of the mortgage, and general relief.

A guardian *ad litem* was appointed for the infant defendants, who accepted the appointment in writing, and filed a formal answer for them; and special administrators *ad litem* were appointed to represent the estates of Sanford T. and Joseph H. Bryan, who also filed formal answers. Malone & Foote filed an answer, admitting their receipt and sale of the cotton for the year 1871, and alleging that they allowed Joseph H. Bryan to have the use of it to enable him to make a crop on the lands during the next year; and they alleged that they did this, and also made advances to him during the years 1872–74, on the agreement and representation of the distributees that he was cultivating the lands for the benefit of the estate. They insisted that a large balance was due on the note, and also a large amount for advances made for the benefit of the estate.

On final hearing, on pleadings and proof, the chancellor held that the complainants were entitled to relief as prayed, and rendered a decree accordingly; and on the statement of the account by him without a reference, ascertaining that a balance of $103.96 was due to the administrators, he also rendered a decree in their favor against Malone & Foote for that sum. From this decree Malone & Foote appeal, and here assign it as error; and they further assign as error, that the estate of Joseph H. Bryan was not properly represented before the court, and that the infant heirs were not properly brought in as defendants.

S. J. CUMMING, for appellants.

COCHRAN & DAWSON, *contra.*

SOMERVILLE, J.—We can see no objection to the manner in which the heirs of Joseph H. Bryan were brought

before the court below. They seem to have been represented regularly by a guardian *ad litem* appointed in accordance with the rule of chancery practice No. 26.—Code, 1876, p. 165.

So, the estates of Joseph H. Bryan and Sanford T. Bryan were represented by administrators *ad litem*. There was no regular administrator or executor of such estates, and it was made the duty of the chancellor to appoint administrators *ad litem* for these particular proceedings, and without requiring a bond of them.—Code, 1876, § 2625.

We can not sustain the objection urged by appellants' counsel, that this statute is unconstitutional. It may be that the Court of Probate possesses the exclusive right, under the constitution, to grant letters testamentary, or of administration.—Const. 1875, Art. V, § 8. But this clause applies only to administrators proper, and has no reference to such as are appointed *pro hac vice*, with no duties incumbent on them apart from those relating to the particular litigation or proceeding in question. The distinction between the two is too manifest for elaborate consideration.

The crop of cotton raised on the Bryan land, for the year 1871, belonged to the estate of Mrs. Sarah Bryan; and the proceeds resulting from its sale, and in the hands of appellants, should have been appropriated to the debt due by the estate. The appellants acted at their own peril, in permitting any other person than a regularly appointed administrator to draw any portion of this fund. The cotton shipped by the administrators of Mrs. Bryan to appellants could also only be appropriated in the same way. The chancellor did not err in so ruling.

If there be any force in the other objections urged to the decree of the chancellor, the assignments of error fail to state with sufficient clearness in what the alleged errors consist. Sup. Ct. Rules of Practice, No. 1; Code 1876, p. 155.

Affirmed.