# Sharp *v.* Sharp.

*Bill in Equity by Ward, against Personal Representatives and Heirs of Deceased Surety on Guardian's Official Bond.*

1. *Decedent's estate; removal of administration into equity, and sale of lands.*—The Chancery Court, when it takes jurisdiction of the administration of a decedent's estate, takes the estate in its condition at that time, and is governed by the laws regulating the administration of estates in the Probate Court; and following its own practice, it will decree a sale of lands when necessary, and when, in similar cases, the Probate Court would have had jurisdiction to order a sale.

2. *Sale of decedent's lands for payment of debts.*—The Probate Court has jurisdiction to order a sale of an intestate's lands in two cases only— (1st) for the payment of debts, and (2d) for distribution ; and a sale for the payment of debts can only be ordered on averment and proof that the personal property is insufficient for that purpose.

3. *Same; averments of petition (or bill) as to insufficiency of personal property.*—An averment in the petition asking a sale (or a bill in equity for the same purpose), that the petitioner " is not informed as to whether the property of which said S. died possessed will be sufficient to pay her said claim, but believes that, after the expenses of administration have been deducted, it will not be sufficient, and that it will be necessary to sell said lands," is not equivalent to an averment that the personal property is insufficient (Code, § 2447), and does not authorize an order to sell the lands for that purpose.

4. *Payment of debts ; bill by creditor.*—A decedent's entire estate, over

Vol. LXXVI.

[Sharp v. Sharp.]

and above the exemptions allowed by law; is charged with the payment of his debts; and creditors who have not acquired a lien in his life-time, or whose debts are not made preferred claims, stand on an equality, and must be paid *pari passu*, if their claims, are presented within the time allowed by law (Code, §§ 2429–30); hence, one creditor can not maintain a bill in his own name, for the payment of his debt alone, nor otherwise acquire preference over other creditors of equal degree.

5. *Subjecting lands descended or devised to payment of debts, under bill by creditor.*—When a guardian has died insolvent, not having made a settlement of his guardianship, a bill in equity by the ward, seeking to establish and enforce her claim, against the estate of a deceased surety on his official bond, does not fall within the principle declared in *Scott v. Ware* (64 Ala. 174), as to the averment and proof necessary to sustain a bill by a creditor seeking to subject lands descended or devised to the payment of his debt; but, under such a bill, the complainant can not have a decree for the sale of lands, until her debt has been ascertained and established by a decree conclusive on the heirs; nor is she entitled to exclusive payment out of the legal assets, over preferred claims, or creditors standing on an equality with her.

6. *Fraudulent conveyance; when creditor without lien may impeach.* A creditor without a lien, or by simple contract only, can not maintain a bill in equity to reach and subject property fraudulently conveyed by his deceased debtor, without averment and proof of a deficiency of legal assets.

7. *Lands purchased by husband, for and in name of wife ; liability to his debts.*—Where lands are purchased by the husband entirely on credit, and a conveyance taken in the name of the wife, with a mortgage on the lands to secure the payment of the agreed price; and the purchase-money is afterwards paid, partly with the proceeds of crops raised on the lands by tenants, and partly by the wife after the death of the husband; the lands can not be subjected by creditors to the payment of his debts.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JNO. A. FOSTER.

The bill in this case was filed on the 10th September, 1881, by Lucinda J. Sharp, who was a daughter of William M. Sharp, deceased, against the personal representative of her deceased guardian, Josephus P. Sharp, and against the personal representative, widow and children of Samuel M. Sharp, deceased, who was a surety on the official bond of said guardian. Its object and prayer was—1st, to remove the guardianship from the Probate Court, and compel a settlement of the accounts in the Chancery Court; 2d, to condemn the money and property in the hands of the administrator of said Samuel M. Sharp, so far as necessary, to the payment and satisfaction of the amount which, on the settlement of the guardian's accounts, might be found due to the complainant; 3d, if any balance should remain unpaid, to sell for its satisfaction a tract of land containing eighty acres, which was claimed as a homestead by the widow and children of said Samuel M. Sharp; and, 4th, if any balance still remained unpaid, to subject to its satisfaction, by a sale under the decree of the court, a tract of land which said Samuel M. bought, in the name of his wife, from W. P. Vanderveer, and which said

[Sharp v. Sharp.]

Vanderveer conveyed to Mrs. Sharp after the death of her husband.

The complainant's father died in October, 1857, and letters of administration on his estate were duly granted to said Josephus P. Sharp ; and on the settlement of the accounts of said administrator, two decrees were rendered against him in favor of the complainant—one for $80, rendered on 2d October, 1880, on the settlement of his first administration ; and the other for $309.40, rendered on the 10th March, 1870, on final settlement of his accounts under a second appointment.    On the 14th June, 1870, said Josephus P. Sharp was appointed, by the Probate Court of said county, guardian of the complainant ; and he gave bond for the faithful discharge of his dutiés, with Samuel M. and Wade H. Sharp as his sureties.    Said Josephus P. died, as the bill alleged, " in the early part of the year 1871, insolvent and intestate," never having settled his guardianship, nor accounted to the complainant in any manner for the money due on said two decrees in her favor.    Letters of administration on his estate were granted on the 29th March, 1871, to Wade H. Sharp and W. J. Wilson ; the latter of whom was still acting as administrator when the bill was filed, and was made a defendant as such representative ; while it was alleged that said Wade H. Sharp, who was also a surety on the guardian's official bond, " died since the 29th March, 1871, intestate and insolvent, and no administration has ever been granted on his estate." Samuel M. Sharp, the other surety on the guardian's bond, died in October, 1879, intestate, leaving a widow and two infant children ; and letters of administration on his estate were granted on the 1st September, 1881, to Frank A. Hall, who was made a defendant to the bill in his representative capacity.

The bill alleged that said Samuel M. Sharp owned, at the time of his death, personal property of value less than $1,000, and a tract of land containing eighty acres, on which he did not reside ; that the widow collected and retained the personal property, claiming it as her own, and none of it had gone into the possession of the administrator.    As to the lands purchased from Vanderveer, and conveyed to Mrs. Martha Jane Sharp, the wife of said Samuel M., the bill averred that the purchase was made by said Samuel M., in the name of his wife, with the intent to defraud the complainant, and to prevent her from subjecting the lands to the payment of her demand ; and that the purchase-money was paid by him, or was paid out of the proceeds of the crops raised on the lands.    The bill contained, also, an allegation in these words:  " Your oratrix is not informed as to whether the property which the said Samuel M. Sharp died possessed of will be sufficient to pay her said claim, but believes that said property, by itself, after the expenses of

[Sharp v. Sharp.]

administration have been deducted, will not be sufficient to satisfy her claim, and that it will be necessary that the property now claimed by the said Martha Jane, and by the said Mary Ann Sharp, shall be sold, and subjected to the payment of her said claim."

Wilson, the administrator of Josephus P. Sharp, filed an answer, in which he pleaded the statute of non-claim as a defense against the complainant's demand. Hall, the administrator of Samuel M. Sharp, filed a formal answer, requiring proof of the allegations of the bill, and alleging that he did not know whether his intestate's estate was solvent or insolvent. An answer was filed by Mrs. Martha Jane Sharp, in which she claimed a homestead in said eighty acres of land of which her husband died seized and possessed, and also claimed the personal property as exempt to her and her children; and she claimed the lands conveyed to her by Vanderveer, alleging that the purchase was made, on credit, for her and in her name, and that the purchase-money was paid in cotton raised on the lands. She pleaded the statute of non-claim, insisting that the complainant's demand was discharged, as against her lands and her husband's estate, by the failure to make due presentation to the administrator of Josephus P. Sharp; and she demurred to the bill, because of the failure to aver such presentation, and because of the failure to aver that the estate of Samuel M. Sharp was insolvent, and because it was multifarious. Mary Ann Sharp adopted the answer, demurrer and plea of said Martha Jane Sharp.

The chancellor overruled the demurrer and the plea, and, on final hearing on pleadings and proof, rendered a decree for the complainant, granting relief as prayed in the bill.

The appeal is sued out by Mrs. Martha Jane Sharp, who here assigns as error the overruling of her demurrer to the bill, and the final decree; and the other defendants below join in her assignments of error.

TROY & TOMPKINS, with whom were SHAVER & HUTCHESON, and H. H. HALL, for appellants.—(1.) The claim asserted by the bill is not only barred, as against the estate of the deceased guardian, by the failure to present it to his personal representative within the time allowed by law, but it is thereby extinguished.—Code, § 2568; *Fretwell v. McLemore*, 52 Ala. 139. If it is still a subsisting demand against the estate of the surety, then, on being paid by the surety, or out of his estate, it may be again presented as a valid claim against the estate of the principal, and the purpose of the statute be thereby thwarted. The cases decided under the old statute, which only barred the remedy, have no application. The creditor has lost his demand

[Sharp v. Sharp.]

by his own laches.—Brandt on Suretyship, § 384; *Gillespie v. Darwin*, 6 Heisk. 21; 2 La. Ann. 427. (2.) The bill is multifarious. It seeks to remove the guardianship from the Probate Court, and to compel a statement and settlement of the guardian's accounts by his administrator, against whom no decree can be rendered; to compel payment of the amount found due, out of the assets belonging to the estate of the surety, and, if necessary, to sell his lands for that purpose; and to set aside alleged fraudulent conveyances. That such a bill is multifarious, see *Felder v. Davis*, 17 Ala. 418; *State Bank v. Ellis*, 30 Ala. 478; *Quarles v. Grigsby*, 31 Ala. 172; *Johnson v. Parkinson*, 62 Ala. 456; Story's Eq. Pl. §§ 280–81. (3.) The bill is without equity, in seeking to enforce payment of a debt out of lands descended, when it is not averred that the estate is insolvent, or that the complainant has exhausted his legal remedies. *Scott v. Ware*, 64 Ala. 174. It is filed, too, against an administrator, nine days after the grant of letters to him; and a decree is rendered against him before the expiration of eighteen months.—Code, § 2614. (4.) The lands sold and conveyed by Vanderveer belong to the statutory estate of Mrs. Sharp, and can not be subjected to the payment of her husband's debts. *Cowles v. Marks*, 53 Ala. 499; *Prout v. Hoge*, 57 Ala. 28; *Wimbish v. B. & L. Association*, 69 Ala. 575.

WATTS & SONS, *contra.*—(1.) The liability of the obligors on the guardian's bond is joint and several, and the surety is not discharged by the failure to present the demand as a claim against the estate of the deceased principal.—*McBroom v. Governor*, 6 Porter, 33; *Cawthorn v. Weisinger*, 6 Ala. 716; *Inge v. Br. Bank*, 8 Porter, 108; *Evans v. Evans*, 16 Ala. 465; *Minter & Gayle v. Br. Bank*, 23 Ala. 762; *Chapin v. Livermore*, 13 Gray, 561; *Ashby v. Johnston*, 23 Ark. 163; *Johnson v. Bank*, 4 Sm. & Mar. 165; *Marshall v. Hudson*, 9 Yerger, 63; *Roberts v. Calvin*, 3 Grat. 358; *Kerr v. Brandon*, 2 How. Miss. 910; *People v. Jansen*, 7 Johns. 331; *Humphreys v. Crane*, 5 Cal. 173. (2.) The bill is not multifarious.—*Kennedy v. Kennedy*, 2 Ala. 573; *Allen v. M. & W. P. Railroad Co.*, 11 Ala. 437. (3.) The right of a simple contract creditor to file a bill to set aside a fraudulent conveyance, and subject the property to the payment of his antecedent debt, is well established.—Code, § 3886; *Zelnicker v. Brigham & Co.*, 74 Ala. 598; *Evans v. Welsh*, 63 Ala. 250. (4.) The complainant being a creditor of Samuel M. Sharp at the time he bought the lands from Vanderveer, they are liable for her debt, unless it was clearly shown (what is not pretended) that the money of Mrs. Sharp was used in paying for them. —*Patterson v. Campbell*, 9 Ala. 933; *Rives v. McGintry*, 10 Ala.

[Sharp v. Sharp.]

138; *Simerson v. Bank*, 12 Ala. 205 ; *Pickett v. Pipkin*, 64 Ala. 520 ; *Sims v. Gaines*, 64 Ala. 392 ; *Harrell v. Mitchell*, 61 Ala. 278 ; *Hubbard v. Allen*, 59 Ala. 283 ; *Horn v. Wyatt*, 60 Ala. 297. This principle is recognized by other courts, in the following cases : *Scitz v. Mitchell*, 4 Otto, 580 ; *Gamber v. Gamber*, 18 Penn. St. 363 ; *Black v. Nease*, 37 Penn. St. 433 ; *Connors v. Connors*, 4 Wisc. 131 ; *Elliott v. Bentley*, 17 Wisc. 591 ; *Duncan v. Roselle*, 15 Iowa, 501 ; *Cramer v. Raiford*, 17 N. J. Eq. 367 ; *Boyd v. Montague*, 73 N. Y. 498 ; *Keeney v. Good*, 21 Penn. St. 349 ; *Gerry v. Gerry*, 11 Gray, 381 ; *Hoyt v. White*, 46 N. H. 45.

CLOPTON, J.—When a court of equity takes jurisdiction of the administration of an estate of a decedent, the court takes the estate in its condition at the time of taking jurisdiction, and is governed by the laws regulating and controlling the sales of property, payment of debts, and settlement of administrations, which are applicable to the administration of estates in the Probate Court. Following its own practice, the court will decree a sale of lands, when necessary, and when, in similar cases, a court of probate would have had jurisdiction to order a sale.—*Bragg v. Beers*, 71 Ala. 151 ; *Hall v. Wilson*, 14 Ala. 295 ; *Wilson v. Crook*, 17 Ala. 59. The Probate Court has jurisdiction to order a sale of the lands of an intestate, in only two cases—for the payment of debts, and for distribution ; and an order of sale for the payment of debts can not be made, unless there is an averment and proof that the personal estate is insufficient therefor.—Code, §§ 2447, 2448, 2449. These statutory provisions govern a court of equity, when it has taken jurisdiction of an estate, and it is being administered in that court.

The averment of the bill is, that complainant "is not informed as to whether the property, which the said Samuel M. Sharp died possessed of, will be sufficient to pay her said claim," but *believes* it is insufficient. This is not an averment, nor the equivalent of an averment, that the personal estate is insufficient to pay the debts. The bill was filed ten days after the appointment of the administrator of Samuel M. Sharp, and in less than eighteen months thereafter a decree was rendered, by which the administrator was ordered to pay to the register, for the use of the complainant, any moneys of the estate he may have in his possession, not exceeding the amount ascertained to be due complainant, after deducting the costs and the expenses of the administration ; provided the debt of complainant is the only debt presented to him within eighteen months after his appointment; and for any balance due to complainant, the reg-

ister was ordered to sell the lands admitted to belong to Samuel M. Sharp.

The decree was made before the expiration of the time in which creditors are required to present their claims, and of the time allowed an administrator to ascertain the condition of the estate, or before he can be compelled to make settlement, and without an ascertainment of the debts of the estate, or of its condition, or what amount, if anything, is due to complainant. The validity of the claim of complainant is dependent on a settlement of the guardianship of Josephus P. Sharp, as her guardian. If, on the reference ordered, the register should find an amount due, his report remains subject to exceptions, and is not final until confirmed. A decree of sale was made, without a judicial finding of either of the facts preceding and necessary to a sale of lands for the payment of debts—*the existence of debts, and the insufficiency of the personal estate for their payment.*

By our statutes, all the estate of a decedent, whether real or personal, other than the exemptions provided by the law, is charged with the payment of his debts. The only restriction is, that resort must be first had to the personal estate. Creditors, not having a lien created in the lifetime of the deceased, or whose claims are not founded on the considerations for which a preference is given by statute, stand *pari passu.* One can not, by any proceedings, acquire a preference; his right being to participate in the assets, real and personal, equally with the other creditors. The corollary from these statutory provisions is, that the rule in the English Court of Chancery —that a single creditor of an estate can bring a bill for the payment of his own debt only, and for this purpose have a discovery of assets—does not prevail in this State. The bill, in such case, must be a creditors' bill, on which the assets may be marshalled and applied for the benefit of all, a due administration of the estate had, and a final settlement made,— thus preventing a multiplicity of suits, and unnecessary and expensive litigation.—*Scott v. Ware,* 64 Ala. 174. The bill is brought by a single creditor for the payment of her debt only, without allegation that there are no other claims, entitled to share equally, and no claims for funeral expenses, expenses of last sickness, or other considerations, for the payment of which the statute provides a preference; and a decree is made for the payment of complainant's debt, without regard to the existence of any such preferred claims, except the costs and expenses of administration.

The bill is filed for the purpose of subjecting to the complainant's demand, not only the personal estate, but also the land descended to the heirs. It may be conceded that the case

[Sharp v. Sharp.]

does not fall within the principle held in *Scott v. Ware, supra,* where it is said : "Before a creditor can obtain the assistance of a court of equity, to subject lands descended, or lands devised, to the satisfaction of his demand, he must have established his debt by a judgment at law, and exhausted his legal remedies; and there must be averment and proof of a want of personal assets, and of the insolvency of the personal representative, and the sureties on his bond, if any he has given." Her demand being founded on the liability of a surety on the official bond of her guardian, who died insolvent, the complainant had a right to come into a court of equity to establish it; and the jurisdiction having attached, the court will grant all the relief to which she is entitled, and settle the entire litigation between the parties, notwithstanding she may have a remedy at law as to a part. But this does not entitle her to an order for the sale of the land, until her debt has been established by a decree of the court, conclusive on the heirs; nor does it entitle her to exclusive payment out of the legal assets, if there are preferred claims, or other creditors having a right to an equal participation.

By the bill, the complainant seeks, also, to subject lands, alleged to have been fraudulently conveyed to his wife, by the procurement of the deceased debtor. Before a simple-contract creditor can come into a court of equity, to subject property fraudulently conveyed by a debtor, who has since deceased, there must be averment and proof of a deficiency of legal assets to satisfy his demand. Without such averment, the bill is without equity. Such a case belongs to that "class of cases dependent upon the jurisdiction of the court over the administration and marshalling of the estate of deceased persons, in which the court was accustomed to intervene for the relief of creditors, though judgments at law had not been obtained, if a necessity existed; and the necessity existed, when there was a deficiency of other assets for the payment of debts."—*State Bank v. Ellis,* 30 Ala. 478; *Lehman v. Meyer,* 67 Ala. 396; *Cawthorn v. Jones,* 73 Ala. 82. There is an absence of both averment and proof of a deficiency of *legal assets,* real and personal, for the payment of the debt.

The lands, claimed to have been fraudulently conveyed, were purchased from Vanderveer by the deceased debtor, for and in the name of his wife, entirely on a credit. A conveyance was made to the wife, and a mortgage was taken on the lands to secure the payment of the consideration, which was payable, in several annual installments, in cotton. Our attention has been specially called to the case of *Keeney v. Good,* 21 Penn. St. 349. That case involved a question of fraud in fact, and the court held the arrangement between the husband and wife "too

unsubstantial, and too easily shammed, to be at all satisfactory." The real estate, on which there was a distillery, was purchased by the wife on a credit, except a small amount, and by agreement the wife appointed the husband her agent to manage the farm and the distillery, for which she was to pay him twenty dollars per month. There was no evidence that the purchase-money was paid with funds of the wife. The court held that, "no agreement of the husband and wife about the property of either, whether it be made in writing or by parol, can avail against creditors, without proof which will render the fact indubitable, that it was hers independent of all agreement between themselves." We are not prepared to disagree to this legal proposition, if it were applicable to the case before us.

We do not understand that any question of actual fraud is really involved, other than it is insisted the lands were paid for with the earnings of the husband and wife. It clearly appears that the payments for the land were made with cotton, grown on the premises by tenants principally, and some of the payments were made by Mrs. Sharp after the death of her husband. No funds or earnings of his assisted in paying for the lands. The question raised on these facts is, are the lands, by law, the property of the wife, or of the husband? This is not an open question. At common law, the wife, during coverture, could make a valid purchase, and accept a valid conveyance of real estate. If she purchased an estate in fee, the conveyance was good, unless it was avoided by the husband in some mode declaring his dissent, or disagreed to by the wife after the husband's death. If the estate was purchased with the concurrence of the husband, the purchase and conveyance remained valid during coverture, and could be disaffirmed only by the wife, and after her coverture. The husband, having once given his consent, could not revoke it, and the wife was incapable to disaffirm during coverture. The husband consented to the purchase by Mrs. Sharp. The conveyance to her, and the mortgage to secure the consideration agreed to be paid, being contemporaneously executed, created in her an estate on condition, which became absolute on the payment of the full consideration. These principles are clearly and distinctly held in *Marks v. Cowles*, 53 Ala. 449. And in *Prout v. Hoge*, 57 Ala. 28, it is said: "The original agreement for the purchase of the premises provided for a conveyance to the wife, on the payment in full by her of the purchase-money. This agreement certainly created in the wife an equity. This equity of the wife was her statutory separate estate, incapable of alienation, except in the mode prescribed by the statute."— *Wimbish v. Montg. M. B. & L. Asso.*, 69 Ala. 575.

By our statutes, "all property of the wife, held by her pre-

vious to the marriage, or which she may become entitled to after the marriage in any manner, is her separate estate." "*In any manner*" includes any purchase and conveyance valid in law, and sufficient to vest in her an estate. The creditors of the husband suffer no loss or damage. The property in the hands of the wife's vendor was not subject to their demands. The labor and attention of the husband, bestowed in its management, was the discharge of a duty, imposed by the statute upon him as trustee; and the rents, income and profits were not subject to the debt of complainant. The lands purchased ·from Vanderveer became the property of Mrs. Sharp, and are not subject to her husband's debts.

Reversed and remanded.